**BEAVER FALLS THRIFT CORPORATION, Individually and Upon Behalf of all Others Similarly Situated, Plaintiff,**

v.

**COMMERCIAL CREDIT BUSINESS LOANS, INC., Defendant.**

**Civ. A. No. 82–0550.**

United States District Court, W.D. Pennsylvania.

March 24, 1983.

---

Mark B. Aronson, Behrend, Aronson & Morrow, Pittsburgh, Pa., for plaintiff.

Donald E. Seymour, Peter J. Kalis, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

We have before us in this case two very different, yet intimately related, motions which must be disposed of before the case proceeds further. One is a motion to disqualify the plaintiff's counsel, Mark B. Aronson. That motion is denied. The other is a motion[1] to certify this lawsuit as a class action and to designate Beaver Falls Thrift Corporation the class representative. That motion is also denied. Our reasoning for the denial of these motions is set forth in the following memorandum opinion.

## FACTS

On April 2, 1982, the law firm of Behrend, Aronson & Morrow filed this civil action against Commercial Credit Business Loans, Inc. (CCBL) on behalf of the plaintiff, Beaver Falls Thrift Corporation (Beaver Falls), individually and as representative of a class consisting of certain present or former commercial loan customers of CCBL. CCBL is the assignee of International Rediscount Corporation (IRC). Beaver Falls entered into the original agreement upon which this suit is based with IRC.

The gravamen of the plaintiff's claim is that interest payments under loan agreements between CCBL and the putative class members were improperly calculated to the disadvantage of the borrowers. CCBL filed an answer and counterclaim on May 3, 1982 in which it raised, *inter alia,* the defense of accord and satisfaction and/or release. The counterclaim is based upon the original "Collateral Loan Agreement" entered into between Beaver Falls and IRC and subsequent amendments thereto. The counterclaim sets out five specific acts by Beaver Falls which allegedly breach the agreement and claims damages in an amount in excess of $10,000. Beaver Falls disputes the allegations of the counterclaim in its reply.

Beaver Falls entered into the above-referenced Collateral Loan Agreement with IRC on July 7, 1976. On the same day, Beaver Falls' corporate subsidiary, Thrift Loan Consumer Discount Company (Thrift Loan), in a written "Double Assignment Agreement", agreed to make itself and its receivables subject to the Collateral Loan Agreement. By written assignment, IRC transferred its rights and obligations under the Collateral Loan Agreement to CCBL on October 2, 1978.

The Collateral Loan Agreement specified a rate of interest payable by Beaver Falls to IRC in the event of any loans made to Beaver Falls by IRC and stated further in Paragraph 6 that

> [i]f, subsequent to the date hereof, the prime rate, i.e., the interest rate charged by the majority of the five (5) leading New York City banks to their prime commercial customers, which is 7.25%, be changed, the charge set forth above shall be similarly changed, as of the first day of the month following such change, by

[1]. We note after reviewing the record of this case that the plaintiff has failed to comply with the requirement of Local Rule 34 relating to the filing of a motion for class certification within 90 days after the filing of a complaint in a class action. In fact, no such motion has been filed to date. We are proceeding here as if such motion had been filed because of the apparent assumption on the part of all the participants in this case, including the Court, that such a motion had been filed. Both parties have submitted briefs which set out their respective positions on the matters before us and a hearing on the class certification issue has been conducted on two separate occasions at which times counsel for both parties were present. We have no difficulty in waiving the requirement of Local Rule 34 under these circumstances. We do, however, caution counsel to follow the requirements of the Local Rules in the future.

an amount equal to the amount of such change in such prime rate.

This agreement was amended twice. On September 9, 1976, in "Amendment No. 1 to Collateral Loan Agreement", the parties lowered the base interest rate stated in the Agreement from .03151 percent per day to .03014 percent per day. The second amendment, deemed "Amendment No. 2 to Collateral Loan Agreement", was signed on May 15, 1981. This amendment established a flat annual interest rate of 15 percent. It is this Amendment No. 2 to Collateral Loan Agreement that CCBL contends operated as a release of any claim Beaver Falls may have had based on the original agreement.

Amendment No. 2 was the result of a series of correspondence and negotiations between the parties. During the course of these negotiations, Kenneth W. Behrend, a partner in the Behrend, Aronson & Morrow firm, was the president of both Beaver Falls and Thrift Loan and as such was closely involved with the negotiations leading up to the second amendment. Mark B. Aronson, the plaintiff's counsel sought to be disqualified by CCBL, is a law partner of Mr. Behrend. Mr. Aronson was also an officer and a director of the plaintiff corporation until the fall of 1982, after the commencement of this lawsuit.

## MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

CCBL forwards two bases for the disqualification of the plaintiff's counsel. Disciplinary Rule (DR) 5–102(A) which mandates withdrawal of counsel when he learns that he or a member of his firm ought to be called as a witness on behalf of his client; and DR 2–103 and DR 2–104, as well as Rule 23, Fed.R.Civ.P., all of which prohibit the solicitation of clients by an attorney.[2]

DR 5–102(A) reads as follows:

**2.** The American Bar Association's Code of Professional Responsibility was adopted by the Supreme Court of Pennsylvania on February 27, 1974 and may be found in the last volume of Title 42, 42 Pa.Cons.Stat.Ann. (Purdon 1975 & 1982–83 Supp.) beginning at page 525. DR 5–102(A) is at 566. DR 2–103 is at 544 and 162 in the pocket part. DR 2–104 is at 546 and 164 in the pocket part.

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial. . . .

CCBL urges upon us the interpretation of DR 5–102(A) that, because of Mr. Behrend's participation in the negotiations leading up to the adoption of the second amendment to the agreement, it is obvious that he ought to be called as a witness and, consequently, the firm of Behrend, Aronson & Morrow should be disqualified from representing the plaintiff.[3] Mr. Aronson has submitted an affidavit which disclaims any intention to call Mr. Behrend as a witness in this lawsuit.

We are not unmindful of the decision in *Sheldon Electric Co., Inc. v. Blackhawk Heating & Plumbing Co., Inc.,* 423 F.Supp. 486 (S.D.N.Y.1976) in which a law firm was disqualified by the court on the defendant's motion because a member of the firm had participated in negotiations leading up to a number of releases. The Court there held as it did despite an affidavit from the plaintiff which indicated the partner would not be called as a witness. That case differs from the one at bar. There, trial on the issue of economic duress with respect to the execution of the releases was set to begin on the day the motion to disqualify was filed; here we have not progressed beyond discovery on the issue of whether the case should proceed as a class action. This difference in the timing of the motions may be enough, in and of itself, to preclude disqualification of Mr. Aronson at this stage of the litigation. If, at some

**3.** Mr. Behrend was the attorney who signed and filed the complaint which began this lawsuit. He has, however, withdrawn his appearance as counsel of record. Nevertheless, CCBL urges the disqualification of the entire firm.

later stage of the proceedings it becomes apparent that Mr. Behrend should be called in order to best present the plaintiff's case, it may then become necessary for Mr. Aronson and his law firm to withdraw. That is not the case now, in fact, the plaintiff has stated specifically that Mr. Behrend will not be called. It is not the job of this Court to second-guess the decision of plaintiff's counsel where, as here, it is not obvious that Mr. Behrend ought to be called as a witness and there is no indication that the decision to not call him will result in prejudice to the client.

We are also guided by the Third Circuit's decision in *Kroungold v. Triester,* 521 F.2d 763 (3d Cir.1975) in which the Court upheld the denial of a motion for disqualification of plaintiffs' counsel when the plaintiffs stated the attorney would not be called as a witness in its case and there was no indication in the record that if the defendant called the attorney prejudice to the plaintiffs' case would result. There has not been even the suggestion here that CCBL will call Mr. Behrend. We find the mere statement in the defendant's motion that he "is likely to be called as a witness on behalf of the Plaintiff" unavailing under these circumstances. *See Davis v. Stamler,* 494 F.Supp. 339 (D.N.J.1980).

CCBL contends that Mr. Aronson should also be disqualified because of a letter he sent to companies identified by the defendant as others who had entered into contracts which contained language similar to that found in the plaintiff's contract. CCBL contends that this letter constituted solicitation of clients in violation of DR 2–103 and DR 2–104, as well as Rule 23, Fed.R.Civ.P. The letter in question consisted of the following:

Gentlemen:

We enclose herein copies of Complaint seeking Class Action Certification and Defendant's Answers to certain Interrog-

atories identifying you as a potential class member in certain litigation pending in the United States District Court here in Pittsburgh.

Please have a representative of your company or your lawyer contact us. Thanks.

Sincerely,

BEHREND, ARONSON AND MORROW

[signed]

Mark B. Aronson

The plaintiff contends that the only reason this letter was sent was to obtain information regarding the interest of potential class members in participating in the lawsuit as a class action and to be able to inform the Court regarding this interest. While we recognize the desire of counsel to have some idea as to the interest in a class action lawsuit before going through the sometimes rigorous certification procedures, and although we are unable to state that Mr. Aronson's actions constitute solicitation of clients, we do suggest that his ex parte mailing of this letter was not the most prudent course to follow for an attorney seeking to act as counsel for the representative plaintiff in a class action. We will not, however, disqualify Mr. Aronson or his law firm from representing Beaver Falls in this individual action.

### CLASS CERTIFICATION

Rule 23(a), Fed.R.Civ.P., provides four prerequisites which must all be met if a proposed class representative is to be allowed to sue on behalf of all the class members.[4] We base our decision to refuse certification of Beaver Falls Thrift Corporation as class representative on Fed.R. Civ.P. 23(a)(3). We find that a legal defense exists in this case against Beaver Falls that is unique to Beaver Falls and which, therefore, precludes Beaver Falls from adequately representing the interests of the class.

---

4. Fed.R.Civ.P. 23(a) provides as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

As stated in our recitation of the facts, one of the issues in this case is the interpretation and effect of Amendment No. 2 to Collateral Loan Agreement, i.e., whether this amendment constitutes a release of the claim raised by this lawsuit. Our inquiry into the question of whether this lawsuit is properly maintainable as a class action does not extend to the underlying merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Thus, we make no determination here of the possible ultimate effect of this release defense. We must, however, recognize the potential impact it may have on the plaintiff's prosecution of the claim. *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1164–65 (7th Cir. 1974). The existence of numerous oral and written communications between Mr. Behrend, in his capacity as president of Beaver Falls and Thrift Loan, regarding the issue of interest payments, and the eventual amendment to the original agreement coupled with testimony by Anthony Flore, the current president of Beaver Falls, about the same subject area lead us to believe that the issue is a legitimate one and will be of some significance during trial of this case. The potential this situation raises for subordination of the interests of the class in favor of the plaintiff's individual case mandates a finding that this plaintiff's claim may be subject to a unique defense and, therefore, that Beaver Falls is an inappropriate class representative. This finding leads to our decision to deny class certification.

The four prerequisites found in Fed.R. Civ.P. 23(a) must all be met in order for a lawsuit to proceed as a class action. We have found that the claim by Beaver Falls is not typical of those of the other potential class members, therefore, the requirement of Rule 23(a)(3) is unfulfilled. Any further discussion by us regarding the other prerequisites found in the rule is unnecessary.

We will enter an order denying the defendant's motion for disqualification of plaintiff's counsel and denying the plaintiff's motion to certify the case as a class action. This decision will allow the case to proceed as an individual action with Mark B. Aronson as plaintiff's counsel.