**CHEMICAL BANK, Appellee,**

v.

**Norman GELLER & Blair Realty, Appellants.**

**No. 268, Docket 83–7550.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1983.

Decided Feb. 6, 1984.

Joseph Cook, West Orange, N.J. (Bernard Schenkler, Ravin & Kesselhaut, West Orange, N.J., of counsel), for appellants.

Barry Willner, New York City (Arthur Steinberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for appellee.

Before FRIENDLY, OAKES and PIERCE, Circuit Judges.

PER CURIAM:

Norman Geller and Blair Realty appeal from the grant of summary judgment by the United States District Court for the Southern District of New York, Vincent L. Broderick, Judge, finding them liable as guarantors to Chemical Bank in the amount of $142,520 plus the costs and expenses, including attorneys' fees, incurred in this action. Because we believe that there is a factual dispute present in this case, we hold that summary judgment is inappropriate and therefore reverse.

Norman Geller is the President of Coastal Steel Corporation ("Coastal") and the general partner in Blair Realty, a limited partnership which owns the property on which Coastal is located. Chemical Bank ("Chemical") began making loans to Coastal in 1976. In September 1979, Coastal executed a note to Chemical for $800,000. The interest rate was set at "4½ per cent per annum in excess of the prime commercial loan rate of interest charged by [Chemical] on 90-day unsecured loans to the most substantial and responsible commercial borrowers, which interest rate ... shall change as and when such prime rate of interest shall change...." In connection with this loan, Geller and Blair Realty executed guarantees which form the basis for this action. The relevant language is set out in the margin.[1]

Coastal filed a petition in bankruptcy for reorganization under Chapter 11 on April 11, 1980. One week later, the United States Bankruptcy Court for the District of New Jersey entered an order under 11 U.S.C. § 364 (Supp. V 1981) authorizing Chemical to advance an additional $440,000 to Coastal, and to receive certain inventory and receivables as security. The interest on this loan was also pegged to the "prime rate." On May 8, 1980, the bankruptcy court entered a consent judgment and order which, among other things, provided for an additional advance of $240,000 by Chemical Bank and a schedule for repayment of the $2,342,469[2] owed to Chemical as of the date

---

1. The undersigned [Geller and Blair Realty] ... irrevocably and unconditionally guarantee to you [Chemical Bank] and agree to be, without deduction by reason of setoff, defense, or counterclaim of the client [Coastal], primarily liable to you for (i) the due performance of all of the client's contracts and agreements with you, both present and future and any and all subsequent renewals, continuations, modifications, supplements and amendments thereof, and (ii) the payment to you of any and all indebtedness, obligations, liabilities and sums which may be presently due and owing or which shall in the future become due and owing to you from the client....

2. This amount represented the principal and interest owed as of the date of the bankruptcy petition under two agreements: the $800,000 promissory note ("term loan") and a financing agreement whereby Chemical Bank took a security interest in Coastal's accounts receivable. The court ordered Coastal to pay over to Chemical all amounts received on pre-petition accounts receivable, with those monies to be applied first to the principal and interest under the financing agreement and then to that owed under the term loan. In addition, in an April 18, 1980, order authorizing the debtor to obtain secured credit, the court gave Coastal a six month period during which it was required to pay only the interest on the term loan, but none of the principal. Thereafter, Coastal was to

of the bankruptcy petition. Coastal made payments according to this schedule until February, 1982.

Geller claims that in June, 1981, he learned from various newspaper articles that Chemical, like other banks, routinely made up to 44% of its loans to its largest favored customers at rates lower than the reported prime rate. Accordingly, he takes the position that under the terms of its note, Coastal should have been charged 4½% above the lowest rate which Chemical extended to these most favored customers. Geller's attorney explained this view in a letter to Chemical dated June 24, 1981. Coastal nevertheless continued to pay the next seven monthly installments on the note as they came due, in the amounts specified in the bankruptcy court's order of May 8, 1980.

In October, 1981, Chemical filed a motion in bankruptcy court for reimbursement of attorneys' fees incurred in connection with Coastal's bankruptcy case. Coastal then cross-moved, alleging that Chemical had fraudulently misrepresented the interest rate charged to Coastal. The parties eventually agreed to a settlement of the issue of attorneys' fees, which settlement was adopted by the bankruptcy court's order of May 11, 1982.[3] In addition, Coastal withdrew its cross-motion, and the court's order noted that Coastal did so "without prejudice to [its] right to assert any such claim or cause of action in any proceeding in any other forum...."

In February, 1982, Coastal stopped making payments to Chemical. Two months later it filed suit in New Jersey against Chemical for two counts of common law fraud and one count under the Racketeer Influenced and Corrupt Organizations Act

(RICO), 18 U.S.C. §§ 1961–1968 (1976); the action, seeking to establish the "true prime rate" and actual debt of Coastal, is still pending in the United States District Court for the District of New Jersey and involves both pre-petition and post-petition loans and interest charged.

On July 7, 1982, Chemical instituted this action in the Southern District of New York against Geller and Blair Realty as guarantors of Coastal's obligation. In their answer, the guarantors argued, among other things, that neither they nor Coastal were liable on the principal obligation because of Chemical's fraudulent misrepresentations about the prime rate, and that the guarantors were fraudulently induced by these misrepresentations to enter into the guarantee agreements. In addition, Geller and Blair Realty sought a stay of the New York suit pending the outcome of the New Jersey proceeding, or in the alternative, transfer of the New York action to New Jersey for consolidation with that proceeding. The district court rejected their defenses, denied their motion to stay or transfer the case, and granted summary judgment for Chemical in the amount of $142,520, plus costs.[4]

Judge Broderick correctly determined that under the terms of the guarantees, Geller and Blair Realty waived their right to assert a defense based on Chemical's alleged misrepresentations to Coastal. Whether he properly ascertained that as a general matter their fraudulent inducement claim was merely a restatement of Coastal's breach of contract claim and thus barred by the waiver may be open to doubt. *Compare Cranston Print Works Co. v. Brockmann International A.G.,* 521 F.Supp. 609, 614 (S.D.N.Y.1981) (fraud in the inducement not pleaded merely by allegation that defend-

---

make monthly payments of principal in equal installments and interest on the principal balance. At the end of the six months, Coastal had completely paid its obligation under the financing agreement and exceeded by $150,000 the amount of principal which would have been due under the term loan. As of October, 1980, the outstanding amount under the term loan was $390,766.

**3.** Chemical had sought $47,936 in attorneys' fees. The parties settled on the sum of $20,000, plus interest in accordance with the terms of the note, to be paid on October 25, 1982, or on the date on which all the obligations under the note become due and payable.

**4.** This amount consisted of $135,299 in principal and interest for the period February, 1982 to October, 1982, plus $7,220 in interest for October, 1982 to March, 1983.

**64**

ant did not intend to perform), *with Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 746–47 (2d Cir.1979) (alleged fraud in inducement not attempt "to dress up a contract claim in a fraud suit of clothes"). Nevertheless, in this case, we agree with the district judge that Coastal's claim is essentially one of breach of contract. But there is, in any event, an unresolved issue of fact in this case that makes summary judgment inappropriate, that is, the fundamental question of the amount of Coastal's obligation, and thus the amount due under the guarantees to Chemical.

This question of fact necessarily arises. out of the dispute over the interest rate to be charged under the terms of Coastal's note to the bank. Although the guarantees are "unconditional" and without regard to Coastal's defenses, they do not require the guarantors to pay Chemical without regard to the amount of Coastal's obligation. As the Fifth Circuit noted in *Frederick v. United States,* 386 F.2d 481, 484–85 (5th Cir. 1967), "[t]o recover, whether by summary judgment or trial on material issues, the [creditor] must prove the amount due and unpaid on the note and hence due by the guarantor, unless the amount is admitted...." Here, as was the case in *Frederick,* the amount of the principal obligor's indebtedness is not admitted by the guarantor. The extent of Coastal's indebtedness simply cannot be determined apart from the question of how the interest rate is to be computed under the terms of the parties' agreement.

Chemical takes the position that any dispute about the amount of Coastal's debt was settled by the orders of the bankruptcy court. We agree that the court's order of May 8, 1980, fixed the amount of principal and interest due Chemical as of April 11, 1980, the date of the bankruptcy petition. This order did not, however, cover Chemical's subsequent loans and the interest thereon; nor did it cover the post-petition interest on the original note. Likewise, the bankruptcy court's order of May 11, 1982, setting the amount of Chemical's attorneys' fees for which Coastal was liable, did not settle the amount owed for post-petition loans and interest. That order simply rati-

fied an agreement by the parties whereby Chemical would be paid $20,000 in attorneys' fees for the period April 1, 1980 to April 8, 1981, plus interest, and Coastal would withdraw its motion before the bankruptcy court relating to the alleged fraud on the interest rate, without prejudice to its right to pursue this claim elsewhere.

The factual issue which renders summary judgment inappropriate in this case is now before the district court in New Jersey, and we believe that this suit is best resolved in conjunction with the New Jersey action. Although under the terms of the agreement, Geller and Blair Realty consented to the jurisdiction of the state and federal courts in New York as to "any matters whatsoever arising out of and in connection with" their guarantees, such consent does not deprive the district court of its authority to stay this case pending resolution of Coastal's New Jersey action, *see Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co.,* 339 F.2d 440 (2d Cir. 1964), or to transfer this action to New Jersey for consolidation. 28 U.S.C. § 1404 (1976). Accordingly, we reverse the summary judgment of the district court, and remand for further proceedings in accordance with this opinion.

Judgment reversed.