HAROCO, INC., et al., Plaintiffs,

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, et al., Defendants.**

No. 83 C 1618.

United States District Court,
N.D. Illinois, E.D.

Aug. 19, 1988.

Aram A. Hartunian, Hartunian, Futterman & Howard, Robert M. Weissbourd, Phyllis L. Crocker, Chicago, Ill., for plaintiffs.

Don H. Reuben, Robert W. Tarun, Katherine E. Rakowsky, Isham, Lincoln & Beale, David E. Schoenfeld, and Barbara J. Anderson, Alton B. Harris, Kevin M. Flynn, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

In this "prime rate" litigation plaintiffs Haroco, Inc., Roman Ceramics, Inc., California Originals, Inc. and Mike Lane Distilled Products Co. charge defendants American National Bank and Trust Company of Chicago ("ANB"), Walter E. Heller International Corporation and Ronald J. Grayheck with violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 261 *et seq.*, and breach of contract.[1] Before this court are plaintiffs' motion for class certification under Federal Rules of Civil Procedure 23(a) and (b)(3), and defendants' renewed motion for sum-

---

1. On July 7, 1986, Judge Decker dismissed a count predicated on a breach of fiduciary duty.

mary judgment under Rules 9(b) and 11. For reasons hereinafter stated, we grant plaintiff's motion in part and deny defendants' motion for summary judgment.

## BACKGROUND

Numerous lawsuits around the country have charged various banks with fraudulent miscalculation of their "prime rates."[2] A bank's prime rate is commonly understood as the lowest possible interest rate that can be expected on a commercial loan at a given time—usually one given to the bank's most creditworthy customers.[3] Initially adopted by banks to stabilize banking industry variations and restrain excessive competition for commercial borrowers, the prime rate has come to be used as a commercial paper index for banking transactions by thousands of borrowers and bank customers. *See* H. Wallgren, *Principles of Bank Operation* 223 (Rev.Ed.1975) ("Rates charged other borrowers are scaled upward from the prime rate, depending on the size of the loan, the handling costs, and the financial strength and stability of the borrower"); Comment *The Variable Interest Note: An Answer to Uncertainty in a Fluctuating Money Market* 1971 Law and Social Order 600, 603 (1971)

From 1958 to February 1979 plaintiffs' director, Harold Roman,[4] received loans with fixed interest rates from ANB. Roman alleges that ANB officials represented the interest rates he received as one point over ANB's prime rate on the effective dates of the loans. From February 1979 to March 1982 Roman and his companies received loans with floating interest rates that were pegged at one point over the prime. In March 1982 Roman's loans were considered troubled and he and bank officials renegotiated interest rates below the prime for a three-month period. From June to November 1982 Roman's loan agreements set the interest rate at one point over ANB's announced prime rate.[5] In November 1982 Roman ceased business with ANB.

Plaintiffs claim that since 1971 ANB has lent money to its best customers at rates below the announced prime rate. They allege that ANB fraudulently maintained an inflated prime rate in breach of the parties' contract and in violation of federal and state statutes, and sue on behalf of themselves and similarly situated ANB borrow-

---

**2.** *See, e.g., Michaels Building Co. v. Ameritrust Co.,* 848 F.2d 674 (6th Cir.1988) (reversing district court's order of dismissal); *Wilcox v. First Interstate Bank,* 815 F.2d 522 (9th Cir.1987) (reversing district court's grant of summary judgment in favor of defendant bank on plaintiff's RICO claim); *Chemical Bank v. Geller,* 727 F.2d 61 (2d Cir.1984) (reversing district court's grant of summary judgment in favor of bank on suit against guarantors); *Morosani v. First National Bank of Atlanta,* 703 F.2d 1220 (11th Cir.1983); *Grant v. Union Bank,* 629 F.Supp. 570 (D.Utah 1986) (dismissing RICO action); *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 562 (S.D.N.Y.1985); *Kleiner v. First National Bank of Atlanta,* 526 F.Supp. 1019 (N.D.Ga.1981), *later proceeding in* 97 F.R.D. 683 (certifying class). An action against another bank in this circuit based on similar claims was settled with the approval of the district court and was affirmed on appeal. *Mars Steel Corp. v. Continental Illinois National Bank and Trust Company of Chicago,* 834 F.2d 677 (7th Cir.1987). For a general description of the use of RICO in this type of litigation, *see* Burke, *Civil RICO and Interest Rate Regulation,* 39 Bus.Law 1252, 1259–61 (1984).

**3.** This definition was adopted by Webster's New Collegiate Dictionary and is discussed in *An Analysis of Prime Rate Lending Practices at the Ten Largest United States Banks,* Staff Report for House Comm. on Banking, Finance and Urban Affairs, 97th Cong., 1st Sess. (1981) (Appended to Pl.Mem. in Opp. to S.J., exh. E) ("Staff Report") at 1–2. ANB defines its prime rate as "the rate of interest charged by [ANB] to its largest and most creditworthy commercial borrowers for 90–day unsecured commercial loans" (3d am. cplt. at ¶ 13).

**4.** Roman is the sole shareholder, chairman and president of Haroco and the remaining plaintiffs are Haroco's wholly-owned subsidiaries. The parties agree that Roman operates the plaintiff companies, negotiated the loans with ANB and is the real representative of the proposed class.

**5.** One author notes that the practice of pegging interest rates at the bank's "announced" or "published" prime rates grew as an attempt to escape liability in litigations, like this one, that charge a breach of contractual obligation for calculating interests by reference to a rate other than the bank's actual prime. *See* John McCann, Term Loan Handbook (1983) at 38–9, n. 83.

ers.[6] Plaintiffs' allegations relating to the loans with floating interest rates—those between February 1979 and March 1982, and perhaps including those between June and November 1982—properly state RICO and breach-of-contract claims since the alleged scheme to maintain an inflated prime rate would deprive plaintiffs of the lower interest rate that ANB was obligated to charge. *Haroco v. ANB*, 747 F.2d 384 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

 For the fixed-rate loans between 1971 to February 1979, however, the issue is not whether ANB miscalculated the interest due, but whether there was fraud in the making of the contracts, either because the loan agreements falsely stated that the rates received were one over prime or because ANB officials made oral representations to that effect. On June 2, 1987, this court granted defendants summary judgment on plaintiffs' claims arising from

those loans because plaintiffs did not establish an injury from ANB's alleged misrepresentations.[7] We stated that it was difficult to discern even an individual fraud claim from those facts "as plaintiffs agreed upon a specific rate which ANB could not thereafter change." *Haroco v. ANB*, 662 F.Supp. at 595. Because plaintiffs did not claim that ANB would have charged a lower rate, or that Roman could have taken his business elsewhere, they had not alleged a sufficient injury to substantiate a claim of fraud.[8]

Since the named plaintiffs' claims are limited to loans made between 1979 and 1982, a question arises as to the proper time frame for the class claims. Plaintiffs argue that they may represent claims of class members that predate and post-date their own, citing *McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32, 35 (E.D.Pa.1985) (antitrust class representa-

---

**6.** Plaintiffs propose the following class for certification:

> All individuals, corporations, partnerships and other entities who borrowed money from ANB pursuant to notes or agreements that obligated ANB to charge interest at a rate tied to and higher than the "prime rate," in which payment of interest occurred on or after January 1, 1971.

(Pl. mo. for class cert. at 1.)

**7.** In that order we granted summary judgment in favor of defendants on all of plaintiffs' claims because the documents produced by the bank at that time revealed only an insignificant number of ANB's 90–day unsecured commercial loans (8 of 579) between February 15, 1979 and March 18, 1982 to be below the prime rate. *Haroco v. ANB*, 662 F.Supp. 590, 593 (N.D.Ill.1987). Of the eight loans below the prime rate, four were due to rapid or unexpected prime rate changes immediately prior to the effective dates of the loans, three were due to some kind of mistake and only one was because of a negotiated option to borrow at the London Interbank Offer Rate (LIBOR). We held that no jury could reasonably find a RICO violation on the basis of this evidence.

Plaintiffs responded that summary judgment was inappropriate because ANB omitted notes without prepayment privileges from its document production. Plaintiffs filed a timely motion for reconsideration with testimony that such notes should have been included in the production relating to all 90–day unsecured commercial loans. On September 18, 1987, we held that plaintiffs' testimony disputed a materi-

al fact which precluded summary judgment. We therefore vacated our earlier order on the loan prepayment issue. Our holding with respect to plaintiffs' claims relating to loans prior to February 1979, however, remained undisturbed. *Haroco v. ANB*, No. 83 C 1618 (N.D.Ill. Sept. 18, 1987) at 4, n. 1.

**8.** Plaintiffs, in their reply memorandum in support of their motion for class certification, at p. 12, ask this court to reconsider our holding rejecting the claims that rely on fixed rate loans. Even if this request was properly raised it would be denied. To substantiate an actionable injury plaintiffs need to show a detrimental reliance on the false prime rate in entering into the loan agreements. While there is evidence of reliance and allegations of misrepresentation, plaintiffs have thus far failed to claim an actionable injury.

Further, certification would be inappropriate for the class of borrowers who received fixed interest rates. Apparently many of those claims would rely upon the individual oral representations of various ANB officials—questions of fact that are not a proper basis for a class action. *See, e.g., Darms v. McCulloch Oil Corp.*, 720 F.2d 490 (8th Cir.1983). Even those individuals who could substantiate the existence of the oral representations would have to prove that ANB would have given them lower interest rates had it disclosed its true prime rate—an additional individual fact issue, one which the named plaintiffs have been unable to establish. Our conclusion that plaintiffs cannot maintain a claim on the fixed rate loans therefore remains firm.

tive not disqualified by fact that he is no longer engaged in business with defendants); *Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 494 (W.D.Ark.1984) (plaintiff is an adequate representative although his claim does not extend throughout the entire alleged antitrust conspiracy and he ceased doing business with defendants); *In re South Central States Bakery Products Litigation*, 86 F.R.D. 407, 418–19 (M.D.La. 1980) (same); *In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552, 557–58 (D.Md.1978) (same).

■ Defendants argue that plaintiffs cannot represent claims outside the time period of their individual claims because class representatives are required to be members of the class they propose to represent. Defendants' reliance on this rule, however, is misplaced. The requirement of membership in the proposed class is really an issue of standing and its use to preclude class representation of individuals with common claims arising from different time periods has fallen into disfavor with the courts. *See* 1 Newberg on Class Actions, Sections 1120k, pp. 212–16 (1977). To have standing to bring a class action the representative must raise individual issues that are common to the class, but he or she need not at all times be in a jural relationship with the entire class. To avoid the problems raised by the membership rule, courts define classes according to persons affected by the common issues raised by the illegal scheme or practice. By defining plaintiffs' class as those ANB borrowers with floating interest rates tied to ANB's prime rate during the time that ANB wrongfully miscalculated its prime rate, the technical requirement of membership is resolved even though plaintiffs may not themselves claim damages on loans received prior to their floating rate agreements. *See Lewis v. Tully*, 99 F.R.D. 632, 644 (N.D.Ill.1983) (discussing the apparent circularity of defining a class of persons as those subject to defendants' conduct).

■ Despite the failure of defendants' arguments, we limit the class claims to the dates that encompass the claims of its representatives. We base this limitation on our judgment as to the proper handling of litigation resources in the context of this case. Plaintiffs have thus far produced no clear evidence that ANB has indeed miscalculated its prime rate. Until they can demonstrate that ANB lent money on interest rates below the prime during the time that their individual claims arise, we see no reason to extend expensive discovery to ANB's documents that predate the existing claims. Should plaintiffs' evidence countenance the expansion of the class at a later time, Rule 23(c)(1) provides that the court may alter or amend the class certification before the decision on the merits. We now turn to the issues raised by the parties' motions.

### Class Certification

■ Plaintiffs bear the burden of establishing the suitability of a class action. *Eggleston v. Chicago Journeymen Plumbers Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). There are four Rule 23(a) prerequisites to the maintenance of a class action. First, the class must be so numerous that joinder is impractical (numerosity); second, there must be an issue of fact or law common to all class members (commonality); third, the claims or defenses of the representative parties must be typical of those of the class (typicality); and fourth, the plaintiffs must fairly and adequately represent the class. To maintain a class action plaintiffs must satisfy one of the additional requirements in Rule 23(b). Plaintiffs pursue this action under Rule 23(b)(3), "which encompasses those cases in which a class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." Fed.R. Civ.P. 23, Advisory Committee's note. Rule 23(b)(3) requires that the questions of law or fact common to the class members predominate over any questions affecting only individual members (predominance), and that the class action is superior to other available methods of adjudication (superiority).

Since plaintiffs' claims arise from allegations of common practice and rights derived from form contracts, the case appears "to present the classic case for treatment as a class action." *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D.Ga.1983) (certifying class action over bank's miscalculation of its prime rate). The common factual inquiries here focus on which ANB loans are involved in the determination of its prime rate, what interest rates were charged on those loans, and how those rates compared to ANB's published prime rate. The core of the legal issues—whether misrepresentations about ANB's actual prime rate constitute a breach of contract and a pattern of racketeering activity—is also shared by the class. Defendants admit that plaintiffs' class claims satisfy the numerosity and commonality requirements (def. mem. in opp. to class cert. at 10, n. 3). Their memorandum in opposition to class certification instead focuses on typicality, predominance and adequate representation.

*Typicality and Predominance*

■ The typicality requirement is satisfied if the named representative's claims have the same essential characteristics as the claims of the class at large, for example, when they share a legal theory arising from the same transaction or from a similar course of conduct by the defendants. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). While typicality does not require that all claims be identical, the predominance standard requires that the differences between representative's and class claims pale in comparison to the common issues.

Unique defenses that apply against the representative but not against the class may preclude certification. ANB argues that plaintiffs' claims are atypical of the class claims because of Roman's knowledge

of the banking industry and his individual dealings with ANB officials. It further contends that these factors will render the named plaintiffs' case susceptible to individualized defenses and it urges this court to find that the individual issues in the class claims predominate over the common issues shared with the named plaintiffs, citing *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 998 (7th Cir.1980), *Zandman v. Joseph*, 102 F.R.D. 924, 931–32 (N.D.Ind.1984), and *McNichols v. Loeb Rhoades & Co.*, 97 F.R. D. 331 (N.D.Ill.1982).

We reject ANB's contentions. The cases cited are security fraud cases where the plaintiffs' knowledge of and expertise on prospectus disclosure and other financial material would lead to a defense of unjustifiable reliance on defendants' statements. To determine liability for fraud the court would have needed to analyze separately each class member's factual situation. Here, however, Roman's knowledge of the banking industry is not germane to his complaint against ANB. First, ANB makes no claim that plaintiffs knew, in entering into the loan agreements, that ANB miscalculated its prime rate, especially since ANB maintains to this day that it does not. Second, there is no suggestion that "prime rate" means different things to different borrowers under different loan agreements, since ANB in fact publishes only one rate as its "prime." [9] As this court stated in its memorandum and order of September 18, 1987, ANB's definition of its prime rate will depend on the commonly understood and relied-upon meaning of those terms, and plaintiffs' particular understanding of the prime rate, vis-a-vis the class members' understandings, will not be relevant to the claims presented in this lawsuit. Third, ANB has cited no cases—and the court has found none [10]—where an unjustified-reliance de-

**9.** Plaintiffs suggest a subclass of plaintiffs' class based on whether the individual members' loan agreements contain a clause defining ANB's prime rate. At this point we see no reason to subdivide the class on this issue, given that there is no suggestion that ANB's definition varied over the years.

**10.** In one case, *Beaver Falls Thrift Corp. v. Commercial Credit Business Loans, Inc.*, 563 F.Supp. 68 (W.D.Pa.1983), the district court denied certification because the plaintiff had entered into a subsequent agreement which might have acted as a release of liability for defendant on the claim. No such circumstance is implicated here.

fense was accepted in a prime rate case. We therefore conclude that the named plaintiffs have adequately established that their claims are typical of class actions and that the common issues predominate over the individual ones.

*Fair and Adequate Representation*

■ The adequacy of the class representative "turns on the proposed representative's interest in the outcome of the capability of his counsel." *Lewis v. Tully,* 99 F.R.D. 632, 644 (N.D.Ill.1983). Here Roman would be qualified to represent the class only if his "interest in proving his claim[s] will lead him to prove the claims of the remainder of his class." *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 348 (N.D.Ill.1978). We are persuaded that Roman satisfies this requirement and that counsel will adequately protect the interest of the class as a whole.

In an attempt to show that Roman cannot adequately represent the class, ANB charges that Roman seeks revenge against ANB on unrelated disputes; that he expansively defined the class for certification; he lied about his familiarity with other ANB borrowers; he was ignorant of the underlying facts at the time he filed suit; he has caused undue delay in moving for class certification; and he is in collusion with his attorneys. None of these contentions withstand close scrutiny. Roman has vigorously pursued plaintiffs' claims through two motions to dismiss (one of which was granted, but was reversed), two appeals (one to the Supreme Court), a motion for summary judgment (which plaintiffs lost) and its reconsideration, and now motions for class certification and again for summary judgment. If bad blood between the litigants has fueled this lawsuit, it does not detract from the fortitude required for class action litigation. Further, given the peculiar procedural posture of this case, fault for the untimeliness of this motion for certification cannot be placed solely on Roman's shoulders. Roman's lack of knowledge as to the particular loans allegedly made below ANB's prime rate is addressed *infra.* ANB's suggestion that Roman appears in collusion with Aram Hartunian, his

counsel, has never been explained and is devoid of merit. Counsel has previously represented class litigants in this court, is quite experienced with class actions in general and we have no doubt that he is qualified to represent plaintiffs in this lawsuit. The expansive definition of the class was based on good faith arguments regarding plaintiffs' claims and, further, does not indicate that Roman would inadequately represent the class that is ultimately certified by this court. Finally, Roman's alleged lie—that he was familiar with other ANB loan customers—appears to be neither a lie nor an issue of great significance. We therefore reject ANB's objections and conclude that plaintiffs may act as representative for the class defined herein.

*ANB's Motion for Summary Judgment*

ANB complains that Roman filed this action alleging fraud in the calculation of ANB's prime rate by concealing below prime rate loans when Roman and his counsel had no specific knowledge of such loans and no factual basis for the underlying complaint. It seeks dismissal or summary judgment in their favor under Fed.R.Civ.P. 9(b), 11 and 56. Plaintiffs maintain that although they do not know the specific recipients of the below-prime loans, their belief that ANB concealed such loans was based on reasonable inferences from evidence known at the time the complaint was filed. For the reasons stated, ANB's motion is denied.

■ Rule 9(b) requires all pleadings that contain averments of fraud to state with particularity the circumstances constituting such fraud. This requirement imposes a somewhat greater pleading burden on plaintiffs than does the normal notice provision in Rule 8. The purpose of Rule 9(b) is twofold: it is intended to supply the defendant "with sufficient information with which to frame a responsive pleading," *Alco Financial Services v. Treasure Island Motor Inn,* 82 F.R.D. 735, 737 (N.D. Ill.1979), and to "safeguard potential defendants from lightly made claims charging commission of acts that involve some degree of moral turpitude." 5 Wright and Miller, *Federal Practice and Procedure*

Civil § 1296. The requisite degree of specificity depends on the circumstances of each case. *Darling & Co. v. Klouman*, 87 F.R.D. 756, 758 (N.D.Ill.1980). Rule 9(b) is not a rigid rule and it is satisfied if plaintiffs' allegations reasonably notify the defendants of their roles in the alleged scheme. *Morgan v. Kobrin Securities*, 649 F.Supp. 1023, 1028 (N.D.Ill.1986).

■ Here plaintiffs have set forth their allegations of fraud with sufficient particularity. *Haroco v. ANB*, 747 F.2d at 405. The complaint specifies all the particulars about the alleged scheme to fraudulently overcharge plaintiffs on the interest owed on the loans, save the parties and dates of the below-prime loans. Given that this information can only be obtained from ANB's records, it is not surprising that it is omitted from the complaint. *See* 5 Wright & Miller, *Federal Practice & Procedure* Civil § 1298, n. 95 (Rule 9(b) requirements may be relaxed as to matters peculiarly within the opposing party's knowledge). *Accord Michaels Building Co. v. Ameritrust*, 848 F.2d 674 (6th Cir.1988) (plaintiffs' complaint averring fraud in the calculation of the bank's prime rate need not contain particular allegations as to the below-prime loans).

■ Given that plaintiffs have met the burden imposed by Rule 9(b), the court at this time refrains from entering the fray of Rule 11.[11] While Rule 11 imposes a duty on plaintiffs and counsel to conduct a reasonable inquiry and to obtain sufficient facts on defendants' wrongdoing before signing and filing the complaint, it was not intended to provide another level of pretrial review on the merits of plaintiffs' claims. ANB, having unsuccessfully brought two motions to dismiss and a motion for summary judgment, may not now rely on Rule 11 as a vehicle to dispose of this litigation. Should further discovery prove fruitless for plaintiffs' claims, and should ANB re-

new its motion, Rule 11, if appropriate, may serve to compensate ANB for its loss. *Accord Michaels Building, supra* (Rule 11 provides an adequate post-judgment remedy for defendants to a baseless prime rate case). The motion for summary judgment appears, to some extent, to be a vehicle for complaining about the potential discovery costs. This court is mindful of its obligation to manage discovery and it intends to do so. To that end, it expects plaintiffs to tailor their discovery to the theories they have urged upon this court. We leave that, however, to another day.

### CONCLUSION

Plaintiffs' motion for class certification under Rule 23(a) and (b)(3) is granted and, pursuant to Rule 23(c)(1), the court hereby certifies the following class for the purpose of this litigation:

> All individuals, corporations, partnerships and other entities who borrowed money from ANB pursuant to notes or agreements that obligated ANB to charge interest at a floating or variable rate that were tied to ANB's prime rate, either at an amount equal to or higher than that rate, in which payment of interest occurred between and including the dates of February 1979 and March 1982.

For the reasons stated, defendants' motion for dismissal of the complaint or summary judgment under Rules 9(b), 11 and 56 is denied.

---

11. Rule 11 provides that pleadings be signed by an attorney or the party and that

[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading ... that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.