Arthur A. ARENSON, individually and as Executor of the Estate of Sol Arenson, Deceased, and on behalf of a class, Plaintiff,

v.

WHITEHALL CONVALESCENT AND NURSING HOME, INC., and Paul Mulder, Defendants.

No. 94 C 2508.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 28, 1996.

Aram A. Hartunian, Futterman & Howard, Chtd., Chicago, IL, Steven P. Schneck, Law Offices of Robert D. Allison, Chicago, IL, for plaintiff.

Algimantas P. Kezelis, Margaret R. Wolot, French, Kezelis & Kominiarek, P.C., Chicago, IL, Howard M. Hoffmann, Donald R. Lorenzen, Holleb & Coff, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Arthur Arenson, individually and as Executor of the Estate of Sol Arenson, brings this action against Whitehall Convalescent and Nursing Home, Inc. and its president Paul Mulder. Pursuant to this Court's Order dated March 24, 1995, and the plaintiff's voluntary dismissal of several counts, the following counts remain: (1) count II, brought against Mulder under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.; (2) count VIII against Whitehall and Mulder, brought under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et seq.; (3) count IX, against Whitehall and Mulder for common law fraud; and (4) count X, against Whitehall for breach of contract. Arenson seeks both damages and injunctive relief under the first three of these claims, and damages alone on the last. Presently before us is Arenson's motion for class certification for all counts.

### RELEVANT FACTS

When evaluating a motion for class certification, the Court accepts all well-pled allegations made in support of certification as true. *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993). The following recitation of the facts is derived from the allegations of the complaint.

On July 6, 1992, Sol Arenson was admitted to the Whitehall Convalescent and Nursing Home. Second Amended Complaint ("SAC") at ¶ 16. Arthur Arenson signed a contract (the "Resident Agreement") to act as his father's sponsor, guaranteeing payment of all the charges, costs, and expenses incurred for or by his father. Arenson agreed to pay Whitehall $132.00 per day in exchange for housing, food, nursing care, linens, and recreational activities. *Id.* ¶ 18. Arenson also agreed to pay several additional charges that were not included in the daily rate. *Id.* At the heart of the present controversy is the additional amount residents and/or their sponsors agreed to pay for prescriptions and medical supplies ("pharmaceuticals").

In July of 1992, Whitehall purchased pharmaceuticals for Sol Arenson. *Id.* ¶ 21. After Sol Arenson's death on July 13, 1992, Whitehall sent a billing statement to Arthur Arenson, listing charges of $349.76 for the pharmaceuticals. *Id.* ¶ 22. Whitehall also mailed to Arenson an invoice from Weber Automated Systems Company, Inc. ("Weber") showing that the charges totaled $349.76. *Id.* ¶ 23. However, the amount actually charged to Whitehall by Weber for those pharmaceuticals was only $284.89. *Id.* ¶ 24.

Weber supplied Whitehall with all the pharmaceuticals residents needed. *Id.* ¶ 11. Arenson alleges that, pursuant to an oral agreement between Whitehall and Weber, Weber generated two sets of invoices: one set indicating the actual charges by Weber and the other reflecting an inflated price. *Id.* ¶ 12. Whitehall then submitted the inflated invoices to residents, collected. the higher amounts, and kept the difference. *Id.*

Arenson contends that this practice amounted to fraud and breach of contract, because Whitehall falsely represented to residents in two documents, the Resident Agreement and the Schedule of Charges, that the amount they would charged for pharmaceuticals would equal the amount charged to Whitehall. *Id.* ¶¶ 9, 10. The

Resident Agreement signed by each resident upon admission to Whitehall required the resident to pay Whitehall for "any additional charges incurred by or for Resident, including but not limited to" charges for pharmaceuticals. *Id.*, Ex. 4 (Resident Agreement) at ¶ 2(a). Each resident also received a Schedule of Charges that listed examples of services for which Whitehall billed residents in addition to the daily rate of $132.00. SAC, ¶ 10. The Schedule of Charges that was in effect in 1992 provided that residents would be billed for medications at the "current charges by Weber Medical Systems, Inc." *Id.*, Ex. 5 (Schedule of Charges).

Arenson has moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, proposing a class defined as "all persons who have been residents and/or Sponsors of residents to whom Whitehall has asserted and collected charges for pharmaceuticals purchased by Whitehall for said residents during the period April 23, 1984 to the present."[1] (Pl.Mot. at 3.) For the reasons stated below, Arenson's motion is granted.

### ANALYSIS

Arenson bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Rule 23 of the Federal Rules of Civil Procedure requires a two-step analysis to determine whether class certification is appropriate. First, a plaintiff must satisfy all four requirements of Rule 23(a), *i.e.*, numerosity, commonality, typicality, and adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police,* 7 F.3d at 596. Second, the action must also satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Arenson seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predomi-

nate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED.R.CIV.P. 23(b)(3).

Arenson contends that all the requirements of Rule 23(a) and (b)(3) are met, while Whitehall maintains that Arenson fails to meet any of Rule 23's requirements. We address each of the requirements for Rule 23 certification in turn.

*Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). In making this determination, "[t]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D.Ill.1988). *See also In re .VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D.Ill.1991) ("A finding of numerosity may be supported by common sense assumptions."). Arenson is not required to specify the exact number of residents in the class so long as a good faith estimate is provided. *Long v. Thornton Township High Sch. Dist. 205,* 82 F.R.D. 186, 189 (N.D.Ill.1979). However, the estimated numbers cannot be purely speculative. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989).

The precise number of residents who should be included in the class is in dispute. However, the defendant concedes that there were 159 residents who were admitted between 1990 and 1993. This number is relevant because, as noted above, Arenson presently contends that the fraudulent scheme has operated since 1989. Thus, there appears to be at least 159 members of the putative class.

Whitehall argues that the putative class size is properly only 39 (or fewer), on the ground that the Schedule of Charges which Arenson attached to his complaint (as Exhibit 5) was only in effect for 1992, a year in which only 39 residents were admitted. Whitehall has submitted a Schedule of

---

1. Arenson now acknowledges that Whitehall was only engaged in the present scheme since 1989. *See* Pl.Mot. at 4, n. 4.

Charges for 1993 that does not contain the same explicit misrepresentation that pharmaceuticals will be billed at "current charges by Weber" contained in the 1992 Schedule of Charges. The parties dispute whether the 1993 Schedule of Charges contains substantially similar misrepresentations.

We decline to take a position in this dispute. In deciding a motion for class certification we take all well-pled allegations of the complaint as true, *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993), and we make no inquiry into the merits of the case, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). Arenson alleges that since 1984 Whitehall distributed Schedules of Charges that represented that residents would be billed for medications at the same prices charged by Weber. SAC ¶ 10. Even if we were to pass on the admissibility and significance of the 1993 document—which we do not—it could at most show that *one* of the misrepresentations allegedly made by Whitehall was not made, at least in the same form, in 1993. It would not create any inference as to the bulk of Arenson's claims, which allege misrepresentations made via the Resident Agreement as well as the Schedule of Charges over a period of several years. Moreover, even a class of 39 members could satisfy the numerosity requirement. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986) (certifying class consisting of 29 plaintiffs, and listing cases certifying even smaller classes).[2]

██ Numerosity does not rest on any magic number. *Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill.1993). "The crux of the numerosity requirement is not the number of interested persons per se, but the practicality of their joinder into a single suit." *Small v. Sullivan*, 820 F.Supp. 1098, 1109 (S.D.Ill.1992). When analyzing whether joinder is impracticable, factors such as judi-

cial economy, geographic diversity of class members, and the ability of class members to institute individual lawsuits should also be considered. *Tenants Associated for a Better Spaulding v. United States Dep't of Housing and Urban Dev.*, 97 F.R.D. 726, 729 (N.D.Ill. 1983).

Judicial economy plainly would be served by allowing the consolidation of 159 potential lawsuits into one action. Furthermore, because the individual claims in this case are relatively small, individual class members may be hesitant to sue. *See, e.g., Peachin v. Aetna Life Ins. Co.*, No. 92 C 2739, 1996 WL 22968 at *3 (N.D.Ill. Jan. 19, 1996) (joinder impracticable where class members were likely to have claims that were small in comparison to the cost of litigation, thereby dissuading them from bringing individual lawsuits). Class members who are residents of a nursing home may also lack the ability to pursue their claims individually. *See Tenants Associated for a Better Spaulding*, 97 F.R.D. at 729 (joinder impracticable because plaintiffs were not in a financial position to individually pursue an action). In light of these factors, the Court concludes that joinder would be impracticable and that the numerosity requirement is met.

*Commonality*

██ Rule 23(a)(2) requires the presence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992), cert. denied, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). The presence of some factual variations among class members' experiences will not defeat class certification. *Id.* at 1017. Plaintiffs need only show that there is "at least one question of law or fact common to the class" to satisfy the commonality requirement. *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D.Ill.1991).

**2.** Whitehall tries to diminish the class size further by arguing (a) that some residents did not take medications and therefore have no claim, and (b) that some of the former residents have died. Whitehall has not presented any specific evidence to support either argument. In the absence of contrary evidence, the Court will not reject the plaintiff's allegations regarding class

size. The Court is also permitted to make the common sense assumption that most residents at a nursing home receive medication or medical supplies at some point in their stay. Nor has Whitehall outlined the legal effect (if any) of death on residents' claims. For all of these reasons, we reject the invitation to whittle down the class size.

A common nucleus of operative fact is typically found where the defendants have engaged in standardized conduct toward members of the proposed class. *Chandler v. Southwest Jeep–Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D.Ill.1995) (citations omitted). Claims arising out of standard documents present a "classic case for treatment as a class action." *Haroco, Inc. v. American Nat. Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D.Ill.1988) (quoting *Kleiner v. First Nat. Bank*, 97 F.R.D. 683, 692 (N.D.Ga.1983)). Arenson alleges that since at least 1989, all Whitehall residents have signed Resident Agreements and been given Schedules of Charges containing misrepresentations, and have been subject to Whitehall's practice of generating invoices and billing residents at inflated prices. Based on these allegations, which arise out of standard documents and a standardized course of conduct, it is clear that questions of fact and law common to all members of the class exist. Arenson has met the commonality requirement.

### Typicality

Rule 23(a)(3) requires that the representative's claims be typical of those of the class. " 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.' " *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (quoting H. NEWBERG, CLASS ACTIONS ¶ 1115(b) (1977)). Because commonality and typicality are closely related, a finding of one often results in a finding of the other. Indeed, Whitehall's sole argument here is that Arenson's claims are atypical because there is no commonality. Our finding that commonality exists negates this challenge. As we have found that Arenson's claims and those of the putative class are based on the same legal theory, we find the typicality requirement met.

### Adequacy of Representation

Rule 23(a) lastly requires that the named plaintiff(s) will "fairly and adequately protect the interests of the class." FED. R.CIV.P. 23(a)(4). The adequacy require-ment has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, *Rosario*, 963 F.2d at 1018; (2) the named representative must have "a sufficient interest in the outcome to ensure vigorous advocacy," *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill.1986); and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously, *Kriendler v. Chemical Waste Mgmt., Inc.*, 877 F.Supp. 1140, 1159 (N.D.Ill.1995).

Whitehall challenges the first element by again arguing that Arenson's claims are unique to himself, so his interests conflict with claims of other members. Since we have found that Arenson's claims are not unique to himself, this argument fails. Moreover, even if Arenson's claims were not identical to those of other class members, Whitehall has not shown that they are antagonistic. Whitehall has not challenged the second or third elements of the adequacy requirement. An independent review of the record by the Court yields no cause to doubt that Arenson will vigorously advocate the rights of the class and that his counsel is competent and able to conduct the proposed litigation. Thus, we find that all four requirements of Rule 23(a) have been met, and now turn to the requirement that some prong of Rule 23(b) must also be met.

### Predominance and Superiority

Arenson argues that this action satisfies Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members, and that a class action is superior to other methods of adjudicating the controversy. FED.R.CIV.P. 23(b)(3). Whitehall argues the predominance prong is not met, because individual questions predominate over common ones in this action. Specifically, Whitehall points to: (a) the possible existence of oral representations; (b) the fact that different versions of the key documents were given to residents at different times; (c) issues of each resident's individual reliance on the representations; and (d) individual issues of damages. For the following reasons, we find none of these arguments persuasive.

Whitehall first argues that oral representations may have been made to residents regarding whether there would be a "mark up" on prices charged for pharmaceuticals, and that the evidence regarding these oral representations would elevate individual factual issues over those common to the class. Whitehall cites *Marcial v. Coronet Insurance Co.*, 880 F.2d 954 (7th Cir.1989), in which the Seventh Circuit affirmed the District Court's denial of class certification because oral representations were involved, holding that the plaintiff had not shown that common questions predominated. Whitehall fails to show, however, that oral representations about the charges for pharmaceuticals were ever actually made to any resident or sponsor other than Arenson,[3] much less that any such oral representations were material to the causes of action alleged here.

In the absence of any evidence that oral representations were an integral part of the fraud alleged by the plaintiff, *Marcial* does not control. In *Marcial,* the oral representations made to each plaintiff individually were the determining factor in the case. By contrast, Arenson contends that Whitehall's fraudulent statements were made in standard written documents given to every member of the class. *See* SAC ¶¶ 9, 10. The oral representations Arenson received personally may have supplemented the written documents he received, but they do not replace those written statements as the focus of the fraud alleged. Thus, even assuming that material oral representations were made to residents, such additional oral representations do not foreclose a finding that common questions predominate. *See Scholes v. Moore,* 150 F.R.D. 133, 136 (N.D.Ill.1993) (mere fact that oral misrepresentations were made to plaintiffs did not preclude a finding that common issues predominated where misrepresentations also appeared in written documents) (citing *Riordan,* 113 F.R.D. 60, 63 (N.D.Ill.1986)); *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.,* 122 F.R.D. 251, 256 (C.D.Cal.1988) (granting class certification despite oral representations where complaint

focused on disclosures and admissions in standardized letters).

Whitehall next argues that individual questions predominate because the documents upon which Arenson bases his claims changed in form somewhat from year to year. For instance, Whitehall has submitted three different versions of the Resident Agreement which may have been in effect during the period at issue here. *See* Def. Resp., Exs. D, E, and F. A careful examination of these documents does not support Whitehall's argument that the differing versions create individual issues of fact or law, however. While it is true that Whitehall did not use the exact same Resident Agreement with all of the class members, the allegedly fraudulent language appears virtually the same in all the Resident Agreements since 1988. *See id.*

A more substantial argument is presented by the different versions of the Schedule of Charges which were in effect at various times during the relevant period. Whitehall notes that, although Arenson alleges that Schedules of Charges containing misrepresentations were given to residents since at least 1989, SAC ¶ 10, he only attached one Schedule of Charges (for 1992) to the complaint. That 1992 Statement of Charges states that residents will be billed for medications at the "current charges of Weber." *See* SAC, Ex. 5. Whitehall has submitted a Schedule of Charges for 1993 that omits any mention of medications and simply states that "Sundries and Non-medical Items" will be billed at "current rates." *See* Def.Resp., Ex. G. The parties dispute vociferously (and pointlessly, since we are not ruling on the merits of the complaint at this time) the proper interpretation of this language. However the language in the 1993 Schedule of Charges is interpreted, the mere submission of that document does not foreclose class certification.

Arenson alleges that residents and sponsors were routinely given Resident Agreements and Schedules of Charges stating that

---

**3.** Arenson alleges in paragraph 17 of the SAC that Whitehall falsely made oral representations to him and his father.

residents would only be charged for the actual costs of pharmaceuticals. By contrast, although Whitehall submitted the 1993 Schedule of Charges to the court, it has never identified any residents to whom it was given, or even stated that it was in fact given to anyone. The document is thus insufficient to rebut Arenson's allegations of a common course of conduct, or demonstrate that individual issues predominate.

■ Whitehall also argues that individual issues of reliance exist which preclude a class action approach, because each class member must prove his or her own reliance on Whitehall's representations. This argument is also faulty. First, reliance need not be individually shown for three of four claims brought in this action: the RICO, Illinois Consumer Fraud Act, and contract claims. *See United States v. Biesiadecki,* 933 F.2d 539, 544–45 (7th Cir.1991) (reliance is not an element of mail fraud, the predicate offense for the RICO claim); *Brooks v. Midas–International Corp.,* 47 Ill.App.3d 266, 272, 5 Ill.Dec. 492, 496, 361 N.E.2d 815, 819 (1st Dist.1977) (reliance is not an element for claims brought under the Illinois Consumer Fraud Act).

■ Even for the common law fraud claim, which requires proof of reliance, "[i]t is well established that individual issues of reliance do not thwart class actions." *Riordan,* 113 F.R.D. at 65. *See also Ridings v. Canadian Imperial Bank of Commerce Trust Co.,* 94 F.R.D. 147, 151 (N.D.Ill.1982) ("the existence of individual questions of reliance does not necessarily bar class certification on the common questions involved"); *Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 403 (N.D.Ill.1981) (same). Especially where plaintiffs' state common law fraud claims arise from the same core of facts as their federal claims, courts have found that certification may be granted on all the claims. *See, e.g., Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 188 (N.D.Ill. 1992) (common issues of securities fraud predominated although class members invested "at different times, for different periods, with different [entities, and] based on different knowledge (i.e., oral or written representations)").

■ Finally, Whitehall contends that individual issues exist because residents suffered different damages. It is well established, however, the presence of individualized damages does not render the class unsuitable for certification. *See De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 233 (7th Cir.1983). In the event that it becomes necessary to adjudicate the individual issues of either damages or reliance, the Court has several options available to it. *See Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

It is of course possible that factual variations exist within the class. Rule 23 does not ask whether individual questions exist, however, but rather whether the common questions predominate over any individual questions. "In considering whether common questions of law and fact predominate under Rule 23(b)(3), the common issues need not be dispositive of the entire litigation." *Riordan,* 113 F.R.D. at 65. The common allegations at issue, that all residents signed Resident Agreements and were given documents containing misrepresentations, and that all were subject to the double-invoice scheme, predominate over any individual factual differences.

In addition to requiring that common issues predominate, Rule 23(b)(3) also requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. The Rule lists four factors courts should consider in making this determination: the interest of members of the class in individually controlling the prosecution of separate matters; whether other actions growing out of the same controversy have been filed involving the same parties; the desirability of concentrating all claims in one forum; and the manageability of any resulting class action. FED.R.CIV.P. 23(b)(3). Here, all of these factors militate in favor of certification. In particular, the small amount at stake for each individual plaintiff urges a class action approach. *See* FED.R.CIV.P. 23 advisory committee's note (1966 amendments); *see also Goldwater v. Alston & Bird,* 116 F.R.D. 342, 356 (S.D.Ill.

1987) (class action was superior where retirees could not afford to sue individually). As both the predominance and superiority prongs are met, the Court finds that Rule 23(b)(3) is satisfied.

## CONCLUSION

For all the foregoing reasons, Arenson's motion to certify a class is granted. The class will consist of all residents and/or the sponsors of residents who were admitted to Whitehall since 1989 and who were charged for pharmaceuticals.