**In re LIFE USA HOLDING, INC., Insurance Litigation.**

**Joseph Benevento, Drew W. Krapf, Esther Rosenblum, Bruce C. Compaine, Edward Maze and Rita Baskin, Plaintiffs for themselves and all other similarly situated annuity purchasers,**

v.

**Life USA Holding, Inc., Defendant.**

**Cheryl DeBasio, on behalf of herself and all others similarly situated,**

v.

**Life USA Holding, Inc.**

**Nos. Civ.A. MDL 1273, 97–CV–7827, 99–CV–1911.**

United States District Court, E.D. Pennsylvania.

Jan. 13, 2000.

---

John M. Elliott, Thomas J. Elliott, Timothy T. Myers, Mark A. Kearney, Brian J. McCormick, Jr., Elliott Reihner Siedzikowski & Egan, P.C., Blue Bell, PA, for plaintiffs.

William T. Hangley, Daniel Segal, Hangley Aronchick Segal & Pudlin, Philadelphia, PA, James F. Jorden, Waldemar J. Pflepsen, Jr., Paul A. Fischer, Richard Karpinski, Jorden Burt Boros Cicchetti, Berenson & Johnson LLP, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

These cases, which were both assigned to this Court for coordinated and/or consolidated pre-trial proceedings by the Judicial Panel

on Multi–District Litigation, are before us now on motions for certification as a class action. For the reasons which follow, plaintiffs' certification request will be granted.

### Factual Background

These cases arose out of the plaintiffs' purchase of "Accumulator" annuity products from the defendant, Life USA Holding, Inc. or its subsidiaries or predecessor(s). The "Accumulator" annuity is a two-tiered, deferred annuity[1] contract whereby upon the deposit of the purchaser's premiums, a one-time "bonus" is paid on the amount deposited and interest is then credited to that increased amount. The Accumulator annuity has two values—an Annuitization value and a Cash value and, after the first year, the purchaser could elect to receive interest only payments over a five year period or defer the payment of interest until it was paid in a lump sum together with the amount of the initial investment. Contract owners who elect to withdraw their funds in a lump sum will receive the lower, cash value on their contract whereas those who choose to receive payments over a defined period of time receive the higher, annuitization value.

By these lawsuits, the plaintiffs contend that the manner in which the defendant marketed, promoted and sold the Accumulator annuities to them was fraudulent in that they were not properly advised of, *inter alia,* the terms and conditions governing the manner in which their funds would earn interest, how they could withdraw their funds, what would happen in the event of withdrawal or the annuities' true interest rate and yields. In addition, plaintiffs charge that there were certain hidden penalties and/or "loads" for lump sum withdrawals.

The plaintiffs in the *Benevento* action fall into two categories: (1) those who, like Drew Krapf and Esther Rosenblum, purchased their Accumulator annuity policies and have not, to date, withdrawn any funds such that their principal and interest remains on deposit with the defendant company; and (2) those like Joseph Benevento, Rita Baskin, Edward Maze and Bruce Compaine who also purchased Accumulator annuities but elected to receive their funds through the minimum five-year payout period. It is unclear into which category Plaintiff Cheryl DeBasio falls. Plaintiffs claim relief under theories of breach of contract, negligent and fraudulent misrepresentation and nondisclosure, breach of good faith and fair dealing, negligence, unjust enrichment and for violations of the New Jersey Consumer Fraud Act. Plaintiffs now move for certification as a class action.

### Class Action Standards

The propriety of treating a civil action as a class action is determined by Fed.R.Civ.P. 23. That Rule states, in relevant part:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish

---

1. An "annuity" operates to provide an individual with fixed, periodic payments over a period of time, often for life or for a specified term of years. Payments represent a partial return of capital and a return of interest on the capital investment. *See, e.g.,* BLACK'S LAW DICTIONARY 90 (Sixth Ed.1990). A "two-tier" annuity is an annuity contract with two fund balances and two different credited interest rates. A high-er interest rate is credited on accumulated sums used to purchase an annuity payout option, with a lower rate credited on funds payable upon lump sum surrender of the contract. B. Vokes, JOURNAL OF INSURANCE REGULATION, *Unconventional Annuity Products in the 403(b) Tax Sheltered Annuity Market* (Vol. 12, No. 1, Fall, 1993).

incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ To obtain class certification, a plaintiff must satisfy all of the requirements of Fed.R.Civ.P. 23(a) and come within one provision of Rule 23(b). *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 624 (3rd cir.), *aff'd,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Nelson v. Astra Merck, Inc.,* 1998 WL 737982, *1 (E.D.Pa.1998). While the Rule 23(a) prerequisites should be given a liberal rather than a restrictive construction, the requirements are mandatory and the failure to establish just one bars class certification. *In Re A.H. Robins Company,* 880 F.2d 709, 740 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *Rodger v. Electronic Data Systems Corporation,* 160 F.R.D. 532,

535 (E.D.N.C.1995). It is the plaintiff, as the party seeking class certification, who has the burden of proving that the class should be certified. *Freedman v. Arista Records,* 137 F.R.D. 225, 227 (E.D.Pa.1991), *citing Davis v. Romney,* 490 F.2d 1360, 1366 (3rd Cir. 1974).

■ The decision concerning class certification is committed to the broad discretion of the district court. While the Court should not consider the merits of the case and must assume the truth of the allegations contained in the complaint, it must nevertheless look beyond the bald allegations in the complaint in determining whether the requirements of Rule 23 have been satisfied. *Medicare Beneficiaries Defense Fund v. Empire Blue Cross/Blue Shield,* 938 F.Supp. 1131, 1139 (E.D.N.Y.1996); *W.P. v. Poritz,* 931 F.Supp. 1187, 1192 (D.N.J.1996), *rev'd on other grounds,* 119 F.3d 1077 (3rd Cir.1997); *Arenson v. Whitehall Convalescent and Nursing Home, Inc.,* 164 F.R.D. 659, 661 (N.D.Ill. 1996); *Curley v. Cumberland Farms Dairy, Inc.,* 728 F.Supp. 1123, 1128 (D.N.J.1989). *See Also: Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974). Courts may thus approve class actions only after a rigorous analysis ensuring compliance with Rule 23. *Snider v. Upjohn Co.,* 115 F.R.D. 536, 538 (E.D.Pa.1987), *citing General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Glick v. E.F. Hutton & Co., Inc.,* 106 F.R.D. 446, 447 (E.D.Pa.1985). *See Also: Rosenstein v. CPC International, Inc.,* 1991 WL 1783, *1–2 (E.D.Pa.1991). In addition, a class may be certified, even though the initial definition includes members who have not been injured or who do not wish to pursue claims against the defendant. *Elliott v. ITT,* 150 F.R.D. 569, 575 (N.D.Ill.1992). Thus, when doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action. *Stewart v. Avon Products, Inc.,* 1999 WL 1038338 at *2 (E.D.Pa.1999), *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 433 (E.D.Pa.1998), *both citing, Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3rd Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

## A. Numerosity

Under Rule 23(a)(1), the class must first be "so numerous that joinder of all members is impracticable." This prerequisite does not, however, require any particular number or require that joinder of all members be impossible, so long as a good faith estimate of the number of class members is provided. *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. at 662; *Rodger v. EDS*, 160 F.R.D. at 535; *Freedman v. Arista Records*, 137 F.R.D. at 228. *See Also: Manning v. Princeton Consumer Discount Company*, 533 F.2d 102, 104 (3rd Cir.1976), *cert. denied*, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976); *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 666 (M.D.Fla.1996); *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D.Pa.1989). This is because, in the context of class actions, "impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." *W.P. v. Poritz*, 931 F.Supp. at 1193; *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990).

In determining whether the litigation should be certified as a class action, the issue is merely whether the representative plaintiff has demonstrated the probability of the existence of a sufficient number of persons similarly inclined and similarly situated to render the class action device the appropriate mechanism for obtaining judicial determination of the rights alleged. *Neuberger v. William Shapiro*, 1998 WL 826980, *1 (E.D.Pa.1998), *citing, Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D.Del.1990); *Dawes v. Philadelphia Gas Commission*, 421 F.Supp. 806, 813 (E.D.Pa.1976). In doing so, the Court is entitled to make common sense assumptions in order to support a finding of numerosity. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D.Ill.1988); *Snider v. Upjohn*, 115 F.R.D. at 539. Where the numerosity question is close, the trial court should find that numerosity exists, since the court has the option to decertify the class later pursuant to Rule 23(c)(1). *Rodger v. EDS*, 160 F.R.D. at 537.

In this case, while the plaintiffs' complaints are silent with regard to an approximate number of potential class members, in their Brief in Support of Class Action Certification, the *Benevento* plaintiffs submit that the potential class consists of some 281,849 people. In further support of this contention, Plaintiffs' Brief includes a graph summarizing the number of Accumulator annuities sold by defendant throughout the United States. Life USA does not dispute this figure, nor does it challenge plaintiffs' argument that the element of numerosity has been met in this action. Since common sense dictates that the joinder of over 280,000 people into one action would be impracticable, we shall find that the numerosity requirement has been satisfied here.

## B. Commonality

Rule 23(a)(2) dictates that there be questions of law or fact common to the class, although not all questions of law or fact raised need be in common. *Weiss v. York Hospital*, 745 F.2d 786, 808–809 (3rd Cir. 1984). The courts have permissively applied the commonality requirement of Rule 23(a)(2) to a large variety of factual circumstances so that common questions have been found to exist in a wide range of contexts. *Rodger*, 160 F.R.D. at 537; *Moskowitz v. Lopp*, 128 F.R.D. at 628; *Snider v. Upjohn, supra.* at 539. The commonality requirement is therefore satisfied if there are some questions of law or fact common to the class and the fact that there is some factual variation among class members' grievances will not defeat certification. *W.P. v. Poritz*, 931 F.Supp. at 1193; *Arenson v. Whitehall*, 164 F.R.D. at 663; *Rodger v. EDS*, 160 F.R.D. at 537.

It should be noted that not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members; a sufficient nexus is established if the claim or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *Williams v. Empire Funding*, 183 F.R.D. at 438; *Sandlin v. Shapiro & Fishman*, 168 F.R.D. at 666. In determining

whether a plaintiff satisfies Rule 23(a)(2), the Court is limited to verifying the existence of common questions of law or fact. *Moskowitz v. Lopp,* 128 F.R.D. at 629; *Snider v. Upjohn,* 115 F.R.D. at 539, both citing, *inter alia, Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177–178, 94 S.Ct. at 2152–2153, 40 L.Ed.2d 732. A common nucleus of operative fact is typically found where the defendants have engaged in standardized conduct toward members of the proposed class. Claims arising out of standard documents present a classic case for treatment as a class action. *Arenson,* 164 F.R.D. at 664, citing *Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D.Ill.1995) and *Haroco, Inc. v. American National Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988).

 In applying these principles to the case at hand, we find that while this is a close case, the plaintiffs have amassed enough evidence to permit this Court to conclude that the requirement of commonality is present here.[2] In this regard, it appears from the record that the defendant company has engaged in standardized conduct toward its clients and potential clients, agent-shareholders and potential agent-shareholders in that its advertising and training materials, statements and promotional materials are directed toward emphasizing Life USA's allegedly unique program of offering its agents stock options and prompt payment of commissions among other things, and of offering its clients products which pay interest rates, bonuses and yields that are higher than those offered by bank certificates of deposit and which are safer than the stock market. While plaintiffs have adduced no evidence of any other claims from proposed class members other than the two actions with which we are here concerned, it nevertheless appears that Defendant is continuing to market and sell its Accumulator annuity policies using the same techniques as those used to sell the plaintiffs' their policies. Consequently, it is certainly foreseeable that additional, similar claims could arise in the near future. For these reasons, we give plaintiffs the benefit of the doubt as regards this second, class action element and find that commonality has been adequately demonstrated.

## C. Typicality

 Rule 23(a)(3) mandates that the claims of the representative parties also be typical of the claims of the class. This "typicality" requirement is intended to safeguard against interclass conflicts and to insure that the interests of the named plaintiffs are more or less coextensive with those of the class such that the class action will be fully, fairly and vigorously prosecuted. *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 55 (3rd Cir.1994); *W.P. v. Poritz,* 931 F.Supp. at 1194 and *Snider v. Upjohn,* 115 F.R.D. at 539, *both citing, Sley v. Jamaica Water and Utilities, Inc.,* 77 F.R.D. 391, 394 (E.D.Pa. 1977). The typicality element essentially merges with commonality since both relate to whether the claims of the representative plaintiff and those of the class are so similar as to insure that the class members' interests will be sufficiently protected. *In Re Prudential Insurance Co. of America Sales Practices Litigation,* 148 F.3d 283, 310–11 (3rd Cir.1998); *Rodger v. EDS,* 160 F.R.D. at 538, citing *Stott v. Haworth,* 916 F.2d 134, 143 (4th Cir.1990) and *General Telephone Company of Southwest v. Falcon,* 457 U.S. at 157, n. 13, 102 S.Ct. at 2370, n. 13. Because commonality and typicality are so closely related, a finding of one often results in a finding of the other. *Arenson v. Whitehall,* 164 F.R.D. at 664.

 A plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of the other class members and is based on the same legal theory. *Moskowitz v. Lopp,* 128 F.R.D. at 630; *Snider v. Upjohn,* 115 F.R.D. at 540, *both citing Zeffiro v. First Pennsylvania Banking & Trust Co.,* 96 F.R.D. 567 (E.D.Pa.1983). Typical does not necessarily mean identical. Thus, the appropriate inquiry is into whether the plaintiff's individual circumstances are markedly different or whether the legal theory upon which the

---

**2.** Again, it appears that Defendant does not take exception to the plaintiffs' argument that commonality has been shown. (See, e.g., Defendant Life USA Holding, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Class Certification Motion, pp. 16–17).

claims are based differs from that upon which the claims of the other class members will be based. *Eisenberg v. Gagnon,* 766 F.2d 770, 786–787 (3rd Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *Weiss v. York Hospital,* 745 F.2d 786, 809, n. 36 (3rd Cir.1984). Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. *Baby Neal v. Casey,* 43 F.3d at 58. Indeed, where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice. *Id., citing General Telephone Co. of Southwest v. Falcon,* 457 U.S. at 157–59, 102 S.Ct. at 2370–71. Thus, in order for the typicality requirement to be met, class representatives must not have an interest that is antagonistic to that of the class members and must have suffered similar injuries. *Rodger v. EDS,* 160 F.R.D. at 538.

In application of the foregoing to this case, we likewise conclude that the element of typicality is present here. While Defendant argues against certification because the class members' claims are dependent on non-uniform oral representations, we note that the gravamen of plaintiffs' claims is that Defendant's sales techniques and advertising constituted an allegedly fraudulent scheme specifically designed to lead them to believe that in purchasing an Accumulator annuity, they would be receiving not only "bonuses" on their initial premium payments but also interest at a higher rate and with a greater yield than that which they would have received through other investment vehicles, such as bank certificates of deposit, stock or mutual funds. The record is clear that although each of defendant's sales agents has his or her own sales technique and does not use a company-created script, the information which the agents receive and disseminate on Life USA's products was written exclusively by the company, which also maintains careful oversight over any and all advertising generated by its agents and/or anyone else with regard to its annuities and other products.

Plaintiffs also contend that they were led to believe that there were no penalties or loads on their investments and that the manner in which they elected to withdraw and/or receive their funds back did not affect the interest rate which they were to receive. Although the parties have not demonstrated the specific existence of any other lawsuits involving Defendants' sale of the annuity products at issue here, as noted earlier, it appears that the defendant continues to utilize the same sales techniques and materials that it employed to sell the plaintiffs their policies. Accordingly, the claims of the class of annuity purchasers whom plaintiffs seek to represent would, of necessity, arise out of the same or a very similar series of transactions and/or occurrences and would involve the same legal issues of fraud, misrepresentation, etc. which the plaintiffs are pursuing here.

In addition, the defenses which Life USA would be presenting in opposition to such claims would likely mirror those which it has raised in this case. Specifically, the materials which the defendant disseminated to the plaintiff arguably outlined the terms and conditions under which the plaintiffs were purchasing their annuities as well as the requirements that the policy be held for at least one year before it could be annuitized and the manner in which the income available thereunder was to become payable. Certainly, it was incumbent upon the plaintiffs to read these materials, particularly in light of the defendant's twenty-day examination and return policy. For this reason, too, we conclude that the typicality requirement has been satisfied.

### D. *Adequacy of Representation*

Finally, Rule 23(a)(4) provides that a class action may only be maintained if "the representative parties will fairly and adequately protect the interests of the class." *Williams v. Empire,* 183 F.R.D. at 440. This final Rule 23(a) prerequisite encompasses two distinct inquiries designed to protect the interests of absentee class members. *In Re Prudential Sales Litigation,* 148 F.3d at 312. First, the adequacy of representation inquiry "tests the qualifications of the counsel to represent the class." *Id., citing In Re General Motors Corporation Pick–Up Truck*

*Fuel Tank Products Liability Litigation,* 55 F.3d 768, 800 (3rd Cir.1995), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). Second, it "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id., citing Georgine v. Amchem, supra.*

■ Adequate representation depends on two factors: (a) the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Weiss v. York Hospital,* 745 F.2d at 811, *citing Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Sandlin v. Shapiro & Fishman,* 168 F.R.D. at 668. On this element, it is the defendant who bears the burden of proving inadequacy of representation. *Moskowitz v. Lopp,* 128 F.R.D. at 636; *Fickinger v. C.I. Planning Corp.,* 103 F.R.D. 529, 533 (E.D.Pa.1984).

■ In this case, we find no evidence that the interests of the individual plaintiffs here are in any way adverse to the interests of the proposed class in general. In the *Benevento* matter, all of the plaintiffs have given deposition testimony indicating that they have an overall basic understanding of the grounds on which their case is premised, of what it means to be a class representative and of the obligations and responsibilities (including financial) which that may entail. Given the limited role of the class representative and the fact that a general lack of sophistication should not render a class representative inadequate, we conclude that the plaintiffs in the *Benevento* action are sufficient to represent the class which they propose. *See, e.g., Gammon v. GC Services Limited Partnership,* 162 F.R.D. 313, 318 (N.D.Ill.1995).

In addition, it appears from the affidavits and filings of the plaintiffs' attorneys in this matter that they are qualified and experienced in handling class action litigation and that they, too, could capably undertake class representation in this matter. We therefore find that defendant has not met its burden of proving the inadequacy of plaintiffs' representation.

### E. *Rule 23(b) Requirements*

The Court having found that plaintiffs have passed the hurdles posed by Rule 23(a), we must now evaluate whether the criterion set by Rule 23(b) have been shown.

Although the plaintiffs here submit that this case is properly certified under any or all of the subdivisions of Rule 23(b), it appears from their moving papers that they believe this case is first properly certified under Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Accordingly, we first direct our analysis to this subsection.

■ The Rule 23(b) "predominance" inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997); *Smith v. First Union Mortgage Corp.,* 1999 WL 509967 at *2 (E.D.Pa.1999). In determining whether common questions predominate, the court's inquiry is directed primarily toward the issue of liability. *Snider v. Upjohn,* 115 F.R.D. at 541, *citing Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3rd Cir.1977). The common questions and their predominance over individual claims are exemplified by the fact that if plaintiff and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of the defendants in order to prove liability. *Id. See Also: Moskowitz v. Lopp,* 128 F.R.D. at 636. Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the anti-trust laws. *Amchem Products, Inc. v. Windsor,* 117 S.Ct. at 2250. The predominance test has also been found to have been easily satisfied in cases involving a common scheme to defraud millions of life insurance policy holders. *See: In re Prudential Insurance Co. of America Sales Litigation,* 148 F.3d at 314.

■ The superiority requirement asks the court to balance, in terms of fairness and

efficiency, the merits of a class action against those of alternative available methods of adjudication. *In re Prudential,* at 316; *Georgine v. Amchem,* 83 F.3d at 632. Any interest of members of the class in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class mechanism as each individual claim is sufficiently small to make individual suits impractical. *Smith v. First Union,* at *2.

■ Defendants contend that this case does not satisfy Rule 23(b)(3) because the purported class members' claims arise from individual transactions involving non-uniform oral misrepresentations at different times and different places. While this argument has some merit in that the information provided to each of the plaintiffs by the individual sales agents who sold them their policies was not identical, it nevertheless appears that the source of the plaintiffs' misinformation and/or confusion was the advertising, sales and marketing literature which Life USA prepared and disseminated to its clients and its agents either directly or indirectly through its Field Marketing Organizations ("FMO's"). Again, the basis for plaintiffs' claims against Defendant is that they and the agents who sold them their policies were intentionally misled by Defendant's sales literature and advertising into believing that in purchasing an Accumulator annuity, they would be receiving not only "bonuses" on their initial premium payments but also interest at a higher rate and with a greater yield than that which they would have received through other investment vehicles, such as bank certificates of deposit, stock or mutual funds. Plaintiffs further complain that they were led to believe that there were no penalties or loads on their investments and that the manner in which they elected to withdraw and/or receive their funds back did not affect the interest rate which they were to receive.

While there are unquestionably individual issues of fact in each case, we find that the predominant issues in each such case of necessity are whether or not the defendant intentionally misled and deceived the plaintiffs, through its product and sales information and the training provided to its agents, into believing (1) that there were no limitations or conditions on the manner in which they could withdraw their deposited funds, (2) that the rates of interest which they would be receiving on those monies would remain the same throughout the period of time that Life USA held the funds and, (3) that the funds were as safe as though they were being held in a bank.

■ In addition, in light of the fact that the potential class in this matter could number over 280,000, we believe that the class action device is superior to other methods of adjudicating this dispute. Obviously, joinder of all class members would be impracticable and duplicative individual trials would impose an inordinate burden on the litigants and the court. *Moskowitz,* 128 F.R.D. at 636. *See Also: Green v. Wolf Corp.,* 406 F.2d 291, 296 (2nd Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Accordingly, we conclude that the prerequisites of Rule 23(b) are present in this case.[3]

For all of the above reasons, we enter the attached order[4] granting class certification to the plaintiffs in the *Benevento* matter.[5]

### ORDER

AND NOW, this 13th day of January, 2000, upon consideration of Plaintiffs' Motion for Class Certification and Defendant's Response thereto and for the reasons set forth in the preceding Memorandum Opinion, it is hereby ORDERED that the Motion is GRANTED and the Plaintiff Class is hereby Certified and Defined in accordance with

---

3. In light of our finding that the test of Rule 23(b)(3) has been met, we see no need to address the parties arguments with respect to the requirements of Rule 23(b)(1) and (b)(2).

4. In so doing, we are mindful that as the litigation develops and new facts are discovered or changes in the parties or in the law arise, it may be necessary to reconsider this order and the

certification or definition of the class. *See, e.g.: Nelson v. Astra Merck, Inc.,* 1998 WL 737982 at *2 (E.D.Pa.1998); *Manual for Complex Litigation, Third,* § 30.18 (1995).

5. Insofar as Ms. DeBasio has presented no evidence in support of her motion requesting class certification, we shall decline to include her as a class representative.

Fed.R.Civ.P. 23(a) and (b)(3) as consisting of the following persons:

All persons who purchased an Accumulator annuity from Life USA between August 1, 1989 and the present and are not officers or directors of Life USA or members of the immediate family of any officer or director of Life USA or any entity in which Life USA has a controlling interest or the heir, successor or assign of any such excluded party.

IT IS FURTHER ORDERED that the plaintiffs Joseph Benevento, Drew W. Krapf, Esther Rosenblum, Bruce C. Compaine, Edward Maze and Rita Baskin are designated as the class representatives and that the attorneys of record for the said named class representatives are authorized to serve as counsel for the class in this action.

IT IS STILL FURTHER ORDERED that counsel for the plaintiffs are DIRECTED to submit to the Court within twenty (20) days of the date of this Order a form of proposed order providing for notice to the class.